IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                        NO. CR 07-0614 RB

REBECCA CHRISTIE, AKA
REBECCA WULF,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the Motion *In Limine* to Exclude Testimony Regarding Manner of Death of Defendant Rebecca Christie, also known as Rebecca Wulf, filed November 20, 2007. Having considered the submissions of counsel, relevant law, and being otherwise fully advised, Ms. Christie's Motion *In Limine* to Exclude Testimony Regarding Manner of Death is **GRANTED IN PART AND DENIED IN PART**.

**I.**      **Background.**

On January 26, 2006, Ms. Christie's three-year-old daughter, Brandi Wulf, died. On January 27, 2006, an autopsy was performed on the body of Brandi Wulf at the New Mexico Office of the Medical Investigator (hereinafter "OMI"). OMI's initial report, signed by Wieslawa Tlomak, M.D. and Ross E. Zumwalt, M.D., identified Brandi Wulf's cause of death as "severe dehydration due to nonspecific diarrhea" (Doc. 47-2). Based on the following analysis, OMI initially classified Brandi Wulf's manner of death as "undetermined":

> Postmortem examination did not reveal any underlying natural disease that could cause chronic diarrhea. However, postmortem studies are limited and some conditions associated with chronic diarrhea can be diagnosed only antemortem. In addition, it cannot be definitely determined to what degree chronic diarrhea caused

the severe dehydration or whether fluid restriction, deliberate or unintentional, caused or contributed to the dehydration (Doc. 47-2).

In an addendum to its initial report, signed by Dr. Zumwalt, OMI revised its initial findings regarding Brandi Wulf's death, stating that the cause of death was determined to be "dehydration and malnutrition" and the manner of death was best certified as "homicide" (Doc. 47-2). The revisions to OMI's report were based on "[e]xtensive investigations of the circumstances of the death provided by Assistant U.S. Attorney Fred Smith" and "further information concerning [Brandi Wulf's] medical history ... obtained from Dr. James M. Noel" (Doc. 47-2).

On March 29, 2007, Ms. Christie was indicted, in connection with the death of her daughter, on charges of Second Degree Murder and child abuse resulting in death. On December 5, 2007, these charges were revised by a Superceding Indictment, charging Ms. Christie with First Degree Murder.

On November 20, 2007, Ms. Christie moved, pursuant to Federal Rule of Evidence 704(b), to exclude testimony from Dr. Zumwalt or any other witness for the United States that the manner of death of Brandi Wulf was "homicide," arguing that "homicide" is a loaded term that necessarily carries connotations of mens rea. The United States counters that it has no intention of soliciting opinion evidence regarding Ms. Christie's state of mind and that "homicide" is a term of art.

**II.     Discussion.**

Ms. Christie's motion raises the legal question of whether, pursuant to Federal Rule of Evidence 704(b), a forensic pathologist may provide expert testimony that Brandi Wulf's manner of death is best characterized as "homicide."

Federal Rule of Evidence 704(a) sets forth a general rule that opinion testimony is admissible even though it embraces an ultimate issue. Fed.R.Evid. 704(a). Federal Rule of Evidence 704(b),

however, creates an exception to this rule, prohibiting expert witnesses, in a criminal trial, from giving an opinion or inference with regard to the ultimate issue of whether the defendant's mental state or condition was sufficient to constitute an element of the crime charged. Fed.R.Evid. 704(b). Whether Ms. Christie had the requisite mens rea is clearly an element of the crime of murder for which she is charged. *See United States v. Serawop*, 410 F.3d 656, 663 (10th Cir. 2005).

The United States argues that the term "homicide," as used by medical investigators, is a term of art that does not inherently contain any connotations regarding a person's mental state. Ms. Christie counters that the term "homicide" is a loaded term that necessarily carries connotations of mens rea. There is support for both positions. For example, *Black's Law Dictionary* defines the term "homicide" as "[t]he killing of one person by another," distinguishing the various types of homicide, which include criminal homicide, excusable homicide, felonious homicide, innocent homicide, and justifiable homicide. *Black's Law Dictionary* 751-52 (8th ed. 2004). Furthermore, OMI, in compliance with the recognized taxonomy, classifies manner of death as one of six categories: natural, accident, suicide, homicide, undetermined, or pending (Doc. 99-2).

*Roget's II: The New Thesaurus*, however, lists "homicide" as being synonymous with "murder" and defines "homicide" as "[t]he crime of murdering someone." *Roget's II: The New Thesaurus* 498 (1988). Moreover, it is noteworthy that the editors of *Black's Law Dictionary* implicitly highlight the common tendency to conflate "homicide" with "murder" by including the following explanatory note taken from a textbook on criminal law: "There is no crime of 'homicide.' Unlawful homicide at common law comprises the two crimes of murder and manslaughter." In addition, it is unusual, in the common vernacular, to characterize justifiable or excusable killing as "homicide." For instance, the killing of an enemy combatant within the context of war is not generally referred to as "homicide," even though it squarely fits within the technical definition of

3

the term.

The tendency to view all forms of homicide as criminal has a historical component. At early common law, all homicides, except those committed in the enforcement of justice, were deemed unlawful and were punished by death. *Mullaney v. Wilbur*, 421 U.S. 684, 692 (1975). In response to the widespread use of capital punishment, however, the types and categories of homicide became increasingly stratified, with distinctions formed on the basis of differing mental states. *See Id.* at 692-93; *Serawop*, 410 F.3d at 662-663. Whatever the origins, however, it is clear that, while the term "homicide" has a technical definition, there is clearly a common tendency to conflate the term "homicide" with the more general concept of unjustifiable killing.

This tendency to conflate "homicide" with unjustifiable killing is reasonably characterized as a subtle, semantic inclination to superimpose a culpable mental state as part of the term's common definition. Consequently, characterizing Brandi Wulf's manner of death as homicide inferentially ascribes to Ms. Christie a culpable mental state. *See United States v. Wood*, 207 F.3d 1222, 1235-36 (10th Cir. 2000); Fed.R.Evid. 704(b). Expert testimony, in a murder trial, which characterizes the manner of death as "homicide," thereby violates Federal Rule of Evidence 704(b). *See Id.* Indeed, this type of expert testimony is inadmissible because it subtly tells the jury what result to reach regarding the defendant's mental state. *See United States v. Richard*, 969 F.2d 849, 854 (10th Cir. 1992). The Tenth Circuit Court of Appeals has recognized as much, holding that, in a murder trial, it is a violation of Federal Rule of Evidence 704(b) to allow an expert to characterize the manner of death as "homicide." *See Wood*, 207 F.3d at 1235-36. The United States contends that, unlike the expert in *Wood*, its expert will avoid violating Federal Rule of Evidence 704(b) by not giving any direct opinion regarding intent. The Court, however, noting that Federal Rule of Evidence 704(b) prohibits both opinions and inferences, does not read *Wood* so narrowly. *See*

Fed.R.Evid. 704(b); *Wood*, 207 F.3d at 1235-36. Indeed, to allow expert testimony that Brandi Wulf's manner of death is best characterized as "homicide" would impermissibly allow an expert witness to subtly infer that Ms. Christie possessed the requisite mens rea for the charged offense. *See* Fed.R.Evid. 704(b); *Wood*, 207 F.3d at 1236.

The Court, however, does not conclude that the United States must entirely avoid expert testimony regarding manner of death. Indeed, if an autopsy so indicated, the Federal Rules of Evidence would allow a qualified medical examiner to provide expert testimony otherwise characterizing the manner of death as "unnatural" or "not of natural causes." *See* Fed.R.Evid. 704(a) (noting that Rule 704(a) generally permits expert testimony in the form of an opinion or inference about an ultimate issue). Nevertheless, if the United States chooses to pursue this course of action, it must tread carefully. At a minimum, the United States should clearly instruct its expert to avoid commenting on Ms. Christie's mental state, which includes avoiding loaded terminology–such as the term "homicide"–with its attendant connotations regarding mental state. *See Wood*, 207 F.3d at 1235-36. Similarly, the United States, when asking questions of its expert about the circumstances surrounding Brandi Wulf's death, should avoid eliciting comments bearing on intent, including expert opinion or inference touching on whether Ms. Christie intentionally, deliberately, recklessly, negligently, with malice aforethought, or otherwise withheld nutrition and fluid from her child.[1] *See United States v. Wang*, 49 F.3d 502, 504 (9th Cir. 1995) (noting that the best practice, with regards to Federal Rule of Evidence 704(b), is for prosecutors to avoid asking questions of expert witnesses which arguably have bearing on intent). "Such ultimate issues are matters for the trier of fact

---

[1] The United States' expert may, of course, opine on Brandi Wulf's cause of death and the medical circumstances surrounding her death, allowing members of the jury to reach their own conclusions regarding Ms. Christie's mental state. *See Richard*, 969 F.2d at 854-55.

alone." Fed.R.Evid. 704(b).

### III. Conclusion.

The United States is prohibited from introducing expert testimony that characterizes the manner of death of Brandi Wulf as "homicide." The United States, however, is not precluded from introducing expert testimony that characterizes Brandi Wulf's manner of death as "unnatural" or "not of natural causes." The United States is directed to clearly instruct its expert to avoid commenting on Ms. Christie's mental state. The United States is further directed to avoid asking questions of its expert the answers to which may bear on intent.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Ms. Christie's Motion *In Limine* to Exclude Testimony Regarding Manner of Death is **GRANTED IN PART AND DENIED IN PART**.

*[signature]*

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**