IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                                        CR No. 07-0614 RB

REBECCA CHRISTIE,
(a/k/a REBECCA WULF),

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Rebecca Christie's Motion in Limine Related to Expert Witness Disclosures, filed September 21, 2009. (Doc. 207.) Having considered the submissions of counsel, relevant law, and being otherwise fully advised, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

The United States filed its Notice of Expert Witness Testimony September 14, 2009. (Doc. 194.) Defendant filed a Motion in Limine Related to Expert Witness Disclosures September 21, 2009. (Doc. 207.) The United States filed its Response October 5, 2009 (Doc. 227), and Defendant submitted a Reply (Doc. 239) October 13, 2009. Defendant asks that this Court exclude several experts' testimony based on the Federal Rules of Evidence and inadequate disclosure under Federal Rule of Criminal Procedure 16. A hearing on this and other motions was held October 14, 2009.

## II. DISCUSSION

### A. Dr. Emmanuel Gallegos

Dr. Gallegos was the emergency room physician who treated Brandi Wulf at Gerald Champion Hospital in Alamogordo on January 26, 2006. Dr. Gallegos intends to testify regarding his efforts to save Brandi's life and a conversation he had with Ms. Christie when Brandi arrived at the hospital. Defendant argues that any conversation between Dr. Gallegos and Ms. Christie should be excluded because these conversations were not disclosed to the Defense as required by Federal Rule of Criminal Procedure 16(a)(1)(B), and under Rule 16(d)(2)(C) the trial court has discretion to exclude these statements for failure to comply with the discovery rules. Defendant does not however object to the introduction of Dr. Gallego's testimony provided that he testifies solely about his efforts to treat Brandi.

When Brandi was brought to the hospital on January 26, 2006, Dr. Gallegos briefly questioned Ms. Christie to determine what happened and facilitate his treatment of Brandi. Ms. Christie stated that she had found Brandi in that condition. The United States asserts that it disclosed this conversation along with Dr. Gallegos' medical reports. At this point, this is the only statement that the United States plans to use at trial. Still, Defendant does not acknowledge that this conversation was disclosed during discovery.

Dr. Gallegos may testify as to what happened on January 26, 2006, his efforts to treat Brandi, and the information disclosed in his medical reports. Provided that his brief conversation with Ms. Christie was properly disclosed to Defendant along with his medical reports, he may also testify concerning the conversation. Dr. Gallegos may not however provide expert testimony regarding possible causes of Brandi's death beyond that which was included in his medical reports and related

to his treatment of Brandi on January 26, 2009. In other words, the bases for any expert opinions offered are limited to the medical reports he submitted to Defendant and his treatment of Brandi. He may not refer to the autopsy report or any other evidence that was collected by medical personnel or investigators post-mortem.

**B.     Jane Bales**

Ms. Bales is a Computer Analysis Response Team (CART) Field Examiner for the FBI in Albuquerque, New Mexico and the investigator who performed the analysis of Ms. Christie's computer. Defendant objects to the testimony of Ms. Bales because (1) the United States has not identified which items on the CD containing the files downloaded from Ms. Christie's computer will be offered into evidence, (2) the Government's notice does not contain a summary of her planned testimony, and (3) the notice does not describe any of the opinions that Ms. Bales intends to offer or the reasons or bases for those opinions. Therefore, Defendant argues that the Government's notice is defective, and Ms. Bales testimony should be excluded pursuant to Federal Rule of Criminal Procedure 16(d)(2)(C).

Both of Ms. Bales' FBI reports concerning the searches she performed were disclosed to the defense along with a CD containing the files seized during the searches. Ms. Bales also produced Excel spreadsheets containing lists of files created, accessed, or modified during relevant time periods and detailing computer usage and internet activity. Ms. Bales testimony and expert opinion must be limited to the information contained in these reports. She may describe the analysis she performed on the computer and give her opinion about Ms. Christie's computer usage based on her analysis of the computer data and the reports she produced. She may not, however, express any expert opinions based on information not contained in these reports, such as whether Ms. Christie's

3

computer usage was "normal."

### C. Rhonda Craig

Ms. Craig is a Forensic Examiner with the FBI Laboratory in Quantico, Virginia. Ms. Craig prepared a report indicating the possible presence of blood on a comforter and urine on a shirt found in the Wulfs' residence, but neither of these tests were confirmed. Defendant argues that Ms. Craig's testimony is not relevant under Federal Rules of Evidence 401 and 402, and furthermore, that her testimony could create the impression that there was physical abuse when no such allegations have been made in this case. The United States counters that Ms. Craig's testimony is necessary to show the condition of the Wulf residence and to show that the Government performed a complete investigation.

The relevancy of this proposed testimony is not apparent. Since the tests for blood and urine were inconclusive, it is unclear how they would assist the trier of fact in determining whether any particular fact or issue in the case is more or less likely. Therefore, Rhonda Craig's testimony will be excluded at trial. However, the parties have agreed to come up with a joint stipulation acknowledging that tests for blood and urine were done and the results of those tests.

### D. Dr. Sharon Cooper

Dr. Cooper works in the areas of child abuse and developmental pediatrics. Defendant objects to the testimony of Dr. Cooper on several bases, including the Government's failure to provide adequate disclosure. The Government has indicated, however, that it does not intend to call Dr. Cooper during its case-in-chief, but requests that it be permitted to call her as a rebuttal witness. The admission of rebuttal witnesses lies within the sound discretion of the trial court. *United States v. Talk*, 13 F.3d 369, 371 (10th Cir. 1993). If Dr. Cooper is offered as a rebuttal witness by the

4

Government during trial, the Court will address any concerns and make its determination about the admissibility of Dr. Cooper's testimony at that point, as it would be difficult and imprudent to make that determination at this stage in the proceedings.

Federal Rule of Criminal Procedure 16 is intended to guard against unfair surprise for the opposing party by requiring disclosure of expert witnesses pre-trial. However, several courts have concluded that Rule 16(a)(1)(G) applies only to the Government's case-in-chief, not rebuttal witnesses. *United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004); *United States v. Windham*, 489 F.2d 1389, 1392 (5th Cir. 1974). Indeed, requiring the disclosure of a witness's opinions and the bases or reasons for her opinions when there is still uncertainty as to what, or if, the witness will testify would be injudicious. Thus, Dr. Cooper is excluded as a witness in the Government's case-in-chief, but the Government may request that she be allowed to testify as a rebuttal witness at trial.

### E.     Dr. Nancy Kellogg

Dr. Kellogg is a Professor of Pediatrics at the University of Texas Health Science Center and an expert in child abuse malnutrition and its effects. Dr. Kellogg intends to testify about Brandi's dehydration and malnutrition. Defendant contends that Dr. Kellogg should not be permitted to testify because her testimony would touch on Ms. Christie's mental state and intent, as prohibited by this Court in its May 26, 2009 Memorandum Opinion and Order concerning Defendant's Motion in Limine to Exclude Testimony Regarding Manner of Death. (Doc. 147.) In its Opinion, this Court stated that "the United States should clearly instruct its expert to avoid commenting on Ms. Christie's mental state, which includes avoiding loaded terminology—such as the term 'homicide'—with its attendant connotations regarding mental state." (Doc. 147.)

5

This does not mean that an expert must avoid all mention of manner of death or cause of death. For example, Dr. Kellogg may comment as to whether the manner of death was "not of natural causes." This is different than saying that the death was a "homicide," which is a loaded term that implies a specific mental state or *mens rea*. Additionally, Dr. Kellogg may comment on the cause of death—i.e., that she died from a lack of fluids. Defendant is correct that Dr. Kellogg should avoid testifying that Ms. Christie "deliberately, intentionally, recklessly, or negligently" withheld fluids, *see United States v. Wang*, 49 F.3d 502, 504 (9th Cir. 1995), because such words infer a certain culpable mental state. *See United States v. Wood*, 207 F.3d 1222, 1235–36 (10th Cir. 2000); Fed. R.Evid. 704(b). Whether the Defendant had the requisite mental state to commit the crime is an issue for the trier of fact, and an expert witness should not usurp this role by even subtly planting in the jury's conscience a given mental state. *See United States v. Richard*, 969 F.2d 849, 854–55 (10th Cir. 1992) (finding that Rule 704(b) prohibits expert from even inferring that defendant had the requisite mental state). The United States is, and has been, advised to steer clear of such loaded questions and to advise their experts against making comments that would infer that Ms. Christie possessed a particular mental state, but this does not prohibit Dr. Kellogg from giving her expert opinion regarding the manner and cause of Brandi's death.

Defendant also argues that Dr. Kellogg's testimony will be cumulative of Dr. Zumwalt's testimony. Dr. Zumwalt is the Chief Medical Investigator of the New Mexico Office of Medical Investigator, and he will testify about the autopsy he performed on Brandi. He is also of the opinion that Brandi died of malnutrition and dehydration. While both witnesses have reached similar conclusions concerning the cause of death, Dr. Zumwalt is anticipated to testify about the autopsy that he performed, and Dr. Kellogg has the unique perspective of an expert in child abuse

malnutrition. As a specialist in malnutrition and dehydration, Dr. Kellogg should be able to testify to things that are beyond Dr. Zumwalt's expertise and experience as a medical investigator. While some of their testimony may touch on similar points, it is not likely to create an undue delay or be needlessly cumulative. *See* Fed. R. Evid. 403.

At this point, the Court will not exclude the testimony of Dr. Kellogg. During trial, however, should the testimony become needlessly cumulative or create an undue delay, the Court will exercise its discretion under Federal Rule of Evidence 403 and exclude the testimony.

### F.   Dr. Harry Wilson

Dr. Wilson is a Pediatric Pathologist and intends to testify that Brandi Wulf did not have a pre-existing disease or condition that caused her death, but that she succumbed to a deprivation of nutrients and dehydration. Again, Defendant argues that such commentary represents an inappropriate commentary on Ms. Christie's mental state because it inevitably suggests that Ms. Christie caused Brandi's death by not providing a healthy, nurturing environment.

This Court did not intend to prohibit testimony that would require such an inferential leap by the jury when it cautioned the United States and its expert witnesses against using such loaded words as "homicide" or directly commenting on Ms. Christie's mental state. (Doc. 147.) Indeed, it is precisely the jury's task to make such leaps based upon the evidence presented at trial. What is prohibited is that the United States or their experts try to make this leap for the jury or implant in the jurors' minds a preconceived notion as to Ms. Christie's mental state. *See Richard*, 969 F.2d 849, 854–55. This does not mean that Dr. Wilson cannot give his expert medical opinion as to the manner or cause of death. Provided Dr. Wilson furnishes a reasonable scientific basis for his opinion, he may testify that Brandi's death was likely caused by environmental conditions. This is

different than stating that Ms. Christie acted recklessly in creating these environmental conditions. "Rule 704(b) only prevents experts from expressly stating the final conclusion or inference as to a defendant's actual mental state. The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *Richard*, 969 F.2d at 854–55.

In its Reply, Defendant also argues that the Government did not comply with the discovery rules because it failed to disclose the bases for Dr. Wilson's testimony as required by Federal Rule of Criminal Procedure 16(a)(1)(G). Defendant is correct that the United States did not explicitly disclose the bases of Dr. Wilson's testimony in its Notice of Expert Witness Testimony. The Government argues that it provided Defendant with medical records and other slides, and that Defendant could have surmised from the disclosure provided that these were the basis of his testimony.

Rule 16(d)(2) provides several possible remedies for failure to comply with the disclosure provisions of Rule 16. For example, the court may exclude the undisclosed evidence. Fed. R. Crim. Pro. 16(d)(2)(C); *see also United States v. Grace*, 526 F.3d 499, 516 (9th Cir. 2008) (affirming district court's decision to exclude evidence as a proper sanction for violation of the trial court's specific discovery order). However, in a non-capital criminal case, "[t]here is no general constitutional right to discovery," *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), and the trial judge has discretion to admit or exclude evidence. *See United States v. Rice*, 52 F.3d 843, 847 (10th Cir. 1995). Thus, when there has been a violation of the discovery rules, it is up to the trial judge to impose a sanction that is "just under the circumstances." Fed. R. Crim. Pro. 16(d)(2)(D).

In the case at hand, prohibiting Dr. Wilson from testifying would be extreme, considering

8

the Government described what opinions he would offer and the records and other bases for his testimony were provided through discovery. However, the Government is admonished for not being more forthcoming in its Notice of Expert Witness Testimony. Rule 16(a)(1)(G) clearly states that it is to provide the "bases and reasons" for the expert's testimony. Fed. R. Crim. Pro. 16(a)(1)(G). This information is important to the preparation of Defendant's case, and the Defense should not have to guess as to the basis of an expert's opinion.

Defendant further argues that Dr. Wilson's testimony should be excluded because it will be cumulative to Dr. Zumwalt's testimony. Dr. Zumwalt is the Chief Medical Investigator of the New Mexico Office of Medical Investigator, and he will testify about Brandi's autopsy. He is also of the opinion that Brandi died of malnutrition and dehydration. While both witnesses are anticipated to testify to and have reached similar conclusions concerning the cause of death, Dr. Zumwalt will testify about the autopsy that he performed, and Dr. Wilson has the unique perspective of a pediatric pathologist. As a specialist in pediatrics, Dr. Wilson will testify that he considered and ruled out other diseases as a cause of death that Dr. Zumwalt did not. While some of their testimony may touch on similar points, it is not likely to create an undue delay or be needlessly cumulative. *See* Fed. R. Evid. 403. Again, should the testimony become needlessly cumulative or create an undue delay, the Court will exercise its discretion under Federal Rule of Evidence 403 to limit the testimony.

Finally, Defendant argues that "without a *Daubert* hearing, the Government cannot show why [Dr. Wilson] is any more qualified to give an opinion regarding Brandi's illnesses than either Dr. Zumwalt or Dr. Kellogg." (Doc. 239.) It appears that Defendant is conflating Federal Rules of Evidence 403 and 702. Under Rule 702 there are three general prerequisites to the admissibility of

evidence from expert witnesses: (1) the evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue"; (2) the proposed witness must be "qualified as an expert by knowledge, skill, experience, training, or education" to provide the finder of fact with that assistance; and (3) the proffered evidence must be reliable. Fed. R. Evid. 702. Rule 702 says nothing about having to show that one witness is more qualified than another to give an opinion. Indeed, Rule 403 allows the trial court to exclude cumulative evidence, but it does not require that the court determine which expert is more qualified to testify. When the Government proffers Dr. Wilson as an expert at trial, Defendant may challenge his qualifications and request a *Daubert* hearing; however, the Court will not exclude his testimony at this point.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendant's Motion in Limine Related to Expert Witness Disclosures is **GRANTED IN PART AND DENIED IN PART**.

*[signature]*
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE